IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

SHIRLEY B. MORRIS                                                                           PLAINTIFF

vs.                              Civil No. 3:15-cv-03078-BAB

NANCY A. BERRYHILL                                                                     DEFENDANT
Acting Commissioner, Social Security Administration[1]

**MEMORANDUM OPINION**

Shirley B. Morris ("Plaintiff") brings this action under 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("The Act").

The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (ECF No. 7).[2] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1.      Background:**

Plaintiff protectively filed her disability application for DIB on March 27, 2012. (ECF No. 12, pp. 21, 532). In her application, Plaintiff alleges being disabled due to asthma and depression.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The docket numbers for this case are referenced by the designation "ECF No. ___." The transcript pages for this case are referenced by the designation "ECF No. ___, p. ___."

1

(ECF No. 12, p. 536).  Plaintiff alleges an onset date of November 4, 2011.  (ECF No. 12, pp. 21, 532).  This application was denied initially and again upon reconsideration. (ECF No. 12, pp. 77–79, 84-85).

Thereafter, Plaintiff requested an administrative hearing on her denied application, and this hearing request was granted.  (ECF No. 12, pp.86-89).  Plaintiff's administrative hearing was held on June 26, 2013, in Harrison, Arkansas.  (ECF No. 12, pp. 38-67).  Plaintiff was present at this hearing and was represented by Don Bishop.  (ECF No. 12, p. 38).  Plaintiff and Vocational Expert ("VE") Sarah Moore testified at this hearing.  (ECF No. 12, pp. 38-67).  At the time of this hearing, Plaintiff was fifty-three (53) years old, which is defined as a "person closely approaching advanced age" under 20 C.F.R. §§ 404.1563(d).  (ECF No. 12, p. 532).  As for her level of education, Plaintiff has a high school diploma.  (ECF No. 12, p. 537).

After this hearing, on November 26, 2013, the ALJ entered an unfavorable decision denying Plaintiff's application for DIB.  (ECF No. 12, pp. 18-31).  In this decision, the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2016.  (ECF No. 12, p. 23, Finding 1).  The ALJ found Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since November 4, 2011, her alleged onset date.  (ECF No. 12, p. 23, Finding 2).  The ALJ determined Plaintiff had the following severe impairments: asthma, seasonal allergies, and disorder of the lumbar spine  (ECF No. 12, p. 23, Finding 3).  Despite being severe, the ALJ determined these impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Part 404 ("Listings").  (ECF No. 12, p. 25, Finding 4).

The ALJ then considered Plaintiff's Residual Functional Capacity ("RFC").  (ECF No. 12, pp. 25-29, Finding 5).  First, the ALJ evaluated Plaintiff's subjective complaints and found her

claimed limitations were not entirely credible. *Id.* Second, the ALJ determined Plaintiff retained the RFC to perform: "light work as defined in 20 C.F.R. § 404.1567)(b) except [Plaintiff] must avoid even moderate exposure to fumes, odors, dusts, gasses, poor ventilation, and similar environments; and [Plaintiff] must avoid dangerous machinery." *Id.* at 25.

The ALJ then determined Plaintiff could not return to her Past Relevant Work ("PRW"). (ECF No. 12, p, 30, Finding 6). The VE testified at the administrative hearing regarding this issue. (ECF No. 12, pp. 62-65). Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs existing in significant numbers in the national economy Plaintiff could perform, such as a cashier, which has a DOT code of 211.462-010, with approximately eight hundred nine thousand eight hundred (809,800) jobs in the national economy, and approximately seven thousand (7,000) jobs in the regional economy, and as a housekeeper, which has a DOT code of 323.687-014, with approximately one hundred thirty-four thousand eight hundred (134,800) jobs in the national economy, and approximately one thousand one hundred (1,100) jobs in the regional economy. (ECF No. 12, pp. 30-31, Finding 10). Because jobs exist in significant numbers in the national economy which Plaintiff can perform, the ALJ also determined Plaintiff had not been under a disability, as defined by the Act, from November 4, 2011, through November 26, 2013, the date of the ALJ's decision. (ECF No. 15, p. 509, Finding 11).

Thereafter, on December 24, 2013, Plaintiff requested a review by the Appeals Council. (ECF No. 12, p. 16). The Appeals Council denied this request on January 22, 2015. (ECF No. 12, pp. 12-15). The Appeals Council granted Plaintiff an extension of time to file a civil action on June 29, 2015. (ECF No. 12, p. 5). On September 2, 2015, Plaintiff filed the present appeal with this Court. (ECF No. 1). The Parties consented to the jurisdiction of this Court on September 24, 2015.

(ECF No. 7). This case is now ready for decision.

**2.** **Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *see* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *see Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001).

As long as there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *see Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *see Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *see Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3). A plaintiff must show his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *see* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity ("RFC") to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform. *see Cox,* 160 F.3d at 1206;  20 C.F.R. §§ 404.1520(a)(4). The fact finder only considers Plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *see* 20 C.F.R. §§ 404.1520(a)(4)(v).

**3.    Discussion:**

In her appeal brief, Plaintiff raises five arguments for reversal: 1) the ALJ erred in disregarding the opinions and findings of the primary treating physician, Dr. Armstrong; 2) the ALJ erred in failing to consider all of Plaintiff's impairments in combination; 3) the ALJ erred in his analysis and credibility findings in regard to Plaintiff's subjective allegations of pain; 4) the ALJ erred in finding that Plaintiff retains the residual functional capacity to perform a limited range of light work; and 5) the ALJ erred in failing to fully and fairly develop the medical record. (ECF No. 10).

### A.     Credibility

In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529.[3] *see Shultz v. Astrue,* 479 F.3d 979, 983 (2007).  The factors to consider are as follows: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions.  *see Polaski,* 739 at 1322.

The factors must be analyzed and considered in light of the claimant's subjective complaints of pain.  *see Id.*  The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints.  *see Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000).  As long as the ALJ properly applies these five factors and gives several valid reasons for finding that Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference.  *see Id.*; *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006).  The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." *Polaski,* 739 F.2d at 1322.

When discounting a claimant's complaint of pain, the ALJ must make a specific credibility determination, articulating the reasons for discrediting the testimony, addressing any

---

[3] Social Security Regulations 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929 require the analysis of two additional factors: (1) "treatment, other than medication, you receive or have received for relief of your pain or other symptoms" and (2) "any measures you use or have used to relieve your pain or symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." However, under *Polaski* and its progeny, the Eighth Circuit has not yet required the analysis of these additional factors.  *see Shultz v. Astrue,* 479 F.3d 979, 983 (2007). Thus, this Court will not require the analysis of these additional factors in this case.

inconsistencies, and discussing the *Polaski* factors. *see Baker v. Apfel,* 159 F.3d 1140, 1144 (8th Cir. 1998). The inability to work without some pain or discomfort is not a sufficient reason to find Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain Plaintiff experiences precludes the performance of substantial gainful activity. *see Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

In the present case, the ALJ extensively discussed Plaintiff's credibility and provided numerous good reasons for discrediting same. First, the ALJ noted Plaintiff worked for multiple years with back pain, and alleged she quit working due to her breathing problems instead of her back pain. (ECF No. 12, pp. 26-27). Next, the ALJ considered Plaintiff's back pain was somewhat relieved with medication. (ECF No. 12, pp. 27, 799). He also referenced numerous treatment dates with Dr. Armstrong where Dr. Armstrong noted Plaintiff's breathing problems were controlled by medication and by avoiding the chemicals she was exposed to at her PRW. (ECF No. 12, p. 28). The ALJ also discussed the objective evidence of record. He noted Dr. Armstrong's opinion from January 23, 2012, on paperwork in connection with Plaintiff's long term disability application that Plaintiff was able to lift up to twenty pounds occasionally and up to ten pounds frequently, she could sit and stand continuously and walk intermittently, but she had to work in a chemical-free workplace. (ECF No. 12, pp. 27, 305). The ALJ also noted pulmonary function testing conducted on November 4, 2011, the results of which were described by Dr. Armstrong as "really good," and "[h]er FCV and FEV1 are both within normal limits." (ECF No. 12, pp. 27, 663). The ALJ, moreover, cited numerous examples from Dr. Armstrong's treatment notes and concluded, "the record contains evidence that [Plaintiff's] breathing difficulties are directly related to the work environment in which she used to work, and that her ability to breath independently is greatly improved when she is

removed from that situation." (ECF No. 12, pp. 27-28). For example, the ALJ cited treatment notes from November 21, 2011, in which Dr. Armstrong remarked as follows:

> She asked if there was any possibility she would be able to go back to work at some point. I told her I thought it was possible. I'm not sure that it's going to be an option but I think that we could give her another month and see how she feels. At that point if she is doing well, we may need to try to go back. I think she is quite a bit improved. I'm afraid that her main asthma triggers are the chemicals they use at work. If this is the case, she may not be able to work there ever again, but I think we should be open to the possibility that she could go back.

(ECF No. 12, pp. 27-28, 661-62). On January 23, 2012, Dr. Armstrong remarked, "[Plaintiff] does pretty well as long as she is not at work," and noted Plaintiff had been doing "pretty well" using her medication every other day. (ECF No. 12, p. 659). On March 26, 2012, Dr. Armstrong noted Plaintiff noticed "marked improvement when she is not at work," and that "[s]he is able to work outside for a little while and then has to stop and come back inside." (ECF No. 12, pp. 657).

The ALJ also cited Plaintiff's activities of daily living and lack of mental health treatment. (ECF No. 12, p. 29). The ALJ noted Plaintiff "does dishes, sweeps, vacuums, prepares meals, assists in the care of family pets, works in her garden, attends to her own personal hygiene unassisted, regularly visits with her mother, and shops for needed items. She is also able to attend medical appointments, use a computer, and drive a vehicle." (ECF No. 12, p. 29). *see, e.g.*, *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (holding that substantial evidence supported ALJ's denial of disability benefits in part because claimant "engaged in extensive daily activities," including taking care of her child, driving a vehicle, preparing meals, performing housework, shopping for groceries, handling money, and visiting family); *Wagner v. Astrue*, 499 F.3d 842, 852 (8th Cir. 2007) (holding that substantial evidence supported ALJ's denial of disability benefits in pert because claimant "engaged in extensive daily activities, such as fixing meals, doing housework,

shopping for groceries, and visiting friends"). The ALJ also discussed that, despite Plaintiff taking anti-depressant medication prescribed by her primary care physician, Plaintiff was never referred to, nor did Plaintiff ever seek, treatment from a mental health specialist, despite claiming she suffered from disabling mental health problems. (ECF No. 12, p. 29); *see Moad v. Massanari*, 260 F.3d 887, 892 (8th Cir. 2001) (in assessing credibility, the Court noted Plaintiff had not sought treatment from any physician in the seven months prior to the administrative hearing); *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling") (quotation omitted).

I find substantial evidence supports the ALJ's credibility assessment and because the ALJ provided multiple valid reasons for discounting Plaintiff's subjective complaints, I defer to the ALJ's credibility determination.  *see Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007) (this Court defers to the ALJ's credibility determination when it is supported by good reasons and substantial evidence).

**B.    RFC and Medical Opinions**

RFC is the most a person can do despite that person's limitations.  20 C.F.R. §§ 404.1545. A disability claimant has the burden of establishing his or her RFC.  *Vossen v. Astrue*, 612 F. 3d 1011, 1016 (8th Cir. 2010).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. §§ 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held a "claimant's residual functional capacity is a

9

medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

The ALJ did not commit error by assigning Dr. Armstrong's opinion less than controlling, or even little, weight. Concerning the opinion of Dr. Armstrong, the ALJ wrote the following:

> Less weight is afforded the opinions of Dr. Armstrong expressed in the physical [RFC] questionnaire he completed. This is for at least two reasons. First, the undersigned finds the limitations proposed by Dr. Armstrong are inconsistent with [Plaintiff's] admitted activities and abilities. [Plaintiff] reported that she is able to perform a number of physically demanding tasks including doing dishes, sweeping, vacuuming, changing bed sheets, preparing meals, caring for family pets, shopping, and driving. In addition, Dr. Armstrong opined that [Plaintiff] would be able to reach overhead less only 25% of the time, yet she testified that her prior left shoulder injury does not affect her ability to raise her arm, and the record contains no evidence to support a limitation in [Plaintiff's] ability to use her right arm.

(ECF No. 12, p. 29). Generally, a treating physician's opinion is given more weight than other sources in a disability proceeding. 20 C.F.R. § 404.1527(c)(2). Indeed, when the treating physician's opinion is supported by proper medical testing, and is not inconsistent with other substantial evidence in the record, the ALJ must give the opinion controlling weight. *Id.* "However, [a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original) (internal quotation omitted). Ultimately, the ALJ must "give good reasons" to explain the weight given the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2).

The ALJ was permitted to give Dr. Armstrong's physical RFC assessment less than

controlling weight because it was inconsistent with Dr. Armstrong's own treatment notes. Dr. Armstrong's physical RFC assessment was completed on August 28, 2012. (ECF No. 12, pp. 711-14). Dr. Armstrong's attending physician statement for Plaintiff's long term disability application was completed on January 23, 2012. (ECF No. 12, pp. 304-05). Evidence in the record indicates Plaintiff saw Dr. Armstrong eighteen times between January 23, 2012, and August 28, 2012. (ECF No. 12, pp. 655–60, 720-41). Dr. Armstrong's objective physical examination of Plaintiff on January 23, 2012, revealed normal findings except for "a slight decrease in breath sounds." (ECF No. 12, pp. 659-60). Dr. Armstrong began prescribing Prozac to Plaintiff on February 23, 2012, and described Plaintiff's affect as "a little flat but not severe." (ECF No. 12, pp. 658-59). On March 26, 2012, Dr. Armstrong noted Plaintiff was "doing pretty well," and that "[Plaintiff] notices a marked improvement when she is not at work . . . she is able to work outside for a little while and then has to stop and come back inside. The main thing that seems to bother her is strong perfumes." (ECF No. 12, pp. 657-58). Dr. Armstrong also noted Plaintiff's "affect is a little flat but not severe," and "[Plaintiff] does have a slight decrease in breath sounds," but the remainder of her objective physical examination revealed normal findings. *Id.* Dr. Armstrong commented, "I don't think [Plaintiff] is ever going to be able to work in a heavily chemical laden environment like Tyson's. She may be able to do some kind of work but it is going to have to involve no chemicals and no strenuous activity." *Id.* at 658. Plaintiff also visited Dr. Armstrong twice in the month of April for acute bronchitis. (ECF No. 12, pp. 655-57, 720-23). Dr. Armstrong conducted allergy testing on May 1, 2012, which did not reveal the cause of Plaintiff's allergies, but she was provided treatment information for dust mites and began immunotherapy treatment. (ECF No. 12, pp. 724-26). Plaintiff then saw Dr. Armstrong four times in June, three times in July, and four times in August for allergy

injections. (ECF No. 12, pp. 727-41).

Plaintiff complained of back pain on August 21, 2012, but the record notes she "has had back problems for years," and Dr. Armstrong's stated in her objective physical examination that "[Plaintiff] is non-tender over her upper L-spine but does have some tenderness closer to her sacrum. She also has some tenderness over her SI joint on the right." (ECF No. 12, pp. 738-39). Plaintiff returned one week later on August 28, 2012, for Dr. Armstrong to complete Plaintiff's RFC paperwork. (ECF No. 12, pp. 740-41). The clinic note for that exam states as follows:

> Well nourished and well developed in no acute distress. Affect is normal and appropriate. Neck is supple without nodes or obvious thyromegaly. Breathing is even and unlabored. Chest is CTA. No wheezing, rales, or rhonchi noted and no decrease in breath sounds noted. Heart is RRR. No murmurs noted. No LE edema noted. No gross focal neurological deficits noted. Back exam was done last visit.

(ECF No. 12, pp. 740-41). Upon review of Plaintiff's symptoms, Dr. Armstrong also stated in her note, "Her breathing has been stable as long as she does not spend a lot of time outside or around chemicals. The Nasonex seems to be helping quite a bit. She has noticed significant improvement in her rhinorrhea since starting it." *Id.* at 740. The same record also indicates Dr. Armstrong and Plaintiff "discussed back pain in further detail," and notes to "see paperwork. *Id.* The physical RFC assessment completed by Dr. Armstrong, however, states only that Plaintiff has "chronic back pain - daily basis" and lists Dr. Armstrong's clinical findings as "PE consistent with back discomfort," and places severe limitations on Plaintiff's ability to function. (ECF No. 12, pp. 711-14). During the span of time between Dr. Armstrong's January 23, 2012, assessment and August 28, 2012, assessment, Dr. Armstrong never placed such extreme limitations on Plaintiff during treatment, and did not begin treating Plaintiff's alleged back pain during that period until one week prior to filling out Plaintiff's disability paperwork on August 28, 2012. The clear inconsistency between Dr.

Armstrong's opinion and her own treatment records of Plaintiff between the dates of Dr. Armstrong's two conflicting medical opinions is alone sufficient to discount Dr. Armstrong's opinion. *see Goff v. Barnhart*, 421 F.3d 785, 790-91 (8th Cir. 2005) ("While the ALJ also found Dr. Prihoda's opinion to be internally inconsistent, we need not comment on that, as an appropriate finding of inconsistency with other evidence alone is sufficient to discount the opinion").

The ALJ's RFC determination must be based on *all* relevant evidence in the record, not simply one consulting physician's opinion, despite the weight the ALJ affords the opinion. *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). I note that in determining Plaintiff's RFC, the ALJ discussed the medical opinions of many treating physicians and specialists, as well as those of the non-examining state agency consultants, and set forth the reasons for the weight given to the opinions. *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians") (citations omitted); *Prosch v. Apfel*, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

Plaintiff specifically argues the ALJ failed to incorporate limitations based on Plaintiff's obesity into his RFC determination. SSR 02-1(p) provides guidance for evaluating obesity. SSR 02-1(p) provides obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. Obesity may also affect an individual's ability to do postural functions, such as climbing, balance, stooping, and crouching. Moreover, SSR 02-1(p) further provides that the combined effects

of obesity with other impairments may be greater than might be expected without obesity. The ALJ is required to consider each of Plaintiff's severe impairments and all of her impairments in combination in determining his RFC. *see Raney v. Barnhart*, 396 F.3d 1007, 1011 (8th Cir. 2005). While Plaintiff correctly points out obesity may result in exertional or postural limitations or interfere with a claimant's ability to sustain a function over time, neither does the record contain nor does the Plaintiff direct this Court to any objective medical findings to support Plaintiff suffered any greater degree of impairment because of her obesity than that accounted for by the ALJ's RFC determination.

Plaintiff never claimed in her application or at the hearing that her obesity affected her ability to perform basic work activities. Plaintiff also asks this Court to consider a host of other alleged impairments Plaintiff only now claims are disabling: osteoarthritis, benign essential hypertension, acute bronchitis, acute upper respiratory infections, hyposmolality and/or hyponatremia, non-dependent tobacco use disorder, unspecified vitamin D deficiency, impacted cerumen, asymptomatic post-menopausal status, unspecified cerebrovascular disease, a forearm contusion, and dermatitis. (ECF No. 10, pp. 12-13). Plaintiff urges this Court to force the ALJ to carry out a duty he was never charged with in the first instance: "to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003) (quoting *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996); *see also Brockman v. Sullivan,* 987 F.2d 1344, 1348 (8th Cir.1993) ("The ALJ, however, had no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability"); *Matthews v. Bowen,* 879 F.2d 422, 424 (8th Cir.1989) (ruling that ALJ did not err in not ordering consultative examination before concluding claimant had no mental

impairment where claimant did not allege disability due to mental impairment and presented only minimal evidence of anxiety). Plaintiff did allege some minimal evidence of impairment regarding the following: back pain, difficulty breathing upon exertion, distorted vision, difficulty sitting, standing and walking for extended periods, chronic obstructive asthma, allergic rhinitis, joint pain in the shoulder region, an ocular cerebrovascular accident, unspecified backache, bulging discs, herniated discs, sudoriferous cyst in the right eye, an old branch vein occlusion in the right eye, anisometropia, presbyopia, depressive disorder, and an unspecified anxiety state. (ECF No. 10, pp. 12-13). The ALJ also discussed Plaintiff's alleged mental impairments and determined they were nonsevere. *see Trenary v. Bowen*, 898F.2d 1361, 1364 (8th Cir. 1990) (Mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis); *see also Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling"). I note, however, that in formulating Plaintiff's RFC, the ALJ fully summarized all of Plaintiff's medical records and separately discussed each of her alleged impairments. Based on the ALJ's synopsis of Plaintiff's medical records and discussion of each of her alleged impairments, I conclude that the ALJ properly considered the combined effects of Plaintiff's impairments, even those which the ALJ determined were non-severe. *see Martise v. Astrue,* 641 F.3d 909, 924 (8th Cir. 2011).

Based on the foregoing, I find substantial evidence in the record as a whole supports the ALJ's RFC determination.

### C.  Development of the Record

In the present case, the combination of medical evidence, State agency physician opinions, and the Plaintiff's own testimony were sufficient to assess Plaintiff's RFC. The Eighth Circuit has held that an ALJ is not required to order a consultative evaluation of every alleged impairment; he simply has the authority to do so if the existing medical sources do not contain sufficient evidence to make an informed decision. *see Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989). The ALJ's failure to order such an evaluation only constitutes reversible error when such an evaluation was necessary for him to make an informed decision. *see Gasaway v. Apfel*, 187 F.3d 840, 842 (8th Cir. 1999); *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000). An ALJ does not necessarily need the opinion of a consultative examiner to assess a claimant's RFC. *see Page v. Astrue*, 484 F3d. 1040, 1043 (8th Cir. 2007) (the medical evidence, State agency physician opinions, and claimant's own testimony were sufficient to assess RFC); *Stormo v. Barnhart*, 377 F.3d 801, 807-08 (8th Cir. 2004) (medical evidence, State agency physicians' assessments, and claimant's reported activities of daily living supported the RFC). The ALJ discussed the medical evidence from numerous treating physicians and the opinions of the non-examining State agency consultants, and set forth the reasons for the weight given to the opinions. Plaintiff, moreover, has not pointed to any relevant evidence to argue that the ALJ would have reached a different conclusion had another medical professional examined Plaintiff. Furthermore, Plaintiff has not demonstrated that a failure to consult with another medical professional resulted in any prejudice above and beyond receipt of an unfavorable decision in her case. *see Haley v. Massanari*, 258 F.3d 742, 749-50 (8th Cir. 2001).

**4.     Conclusion:**

Based on the foregoing, the undersigned finds the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed.  A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 14th day of February 2017.**

/s/  Barry A. Bryant
HON. BARRY A. BRYANT
U. S. MAGISTRATE JUDGE